# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALEXIS LEE,<br><br>            Plaintiff,<br><br>    v.<br><br>DINO DENNISON, ET AL.,<br><br>            Defendants. | Case No. 2:19-cv-1332-KJD-DJA<br><br>**ORDER** |

This matter is before the Court on the following:

- Plaintiff's Sealed Motion to Compel (ECF No. 27), filed on June 19, 2020. Defendants filed a Response (ECF No. 32) on July 6, 2020. Plaintiff did not file a reply.

- Defendants' Motion for Protective Order (ECF No. 30), filed on June 29, 2020. Plaintiff filed a Response (ECF No. 35) on July 14, 2020 and Defendants filed a Reply (ECF No. 36) on July 21, 2020.

- Defendants' Motion to Compel (ECF No. 33), filed on July 9, 2020. Plaintiff filed a Response (ECF No. 38) on July 23, 2020 and Defendants filed a Reply (ECF No. 40) on July 30, 2020.

- Defendants' Motion to Strike (ECF No. 34), filed on July 13, 2020. Plaintiff filed a Response (ECF No. 39) on July 28, 2020 and Defendants filed a Reply (ECF No. 41) on August 4, 2020.

- Plaintiff's Motion for Protective Order (ECF No. 37), filed on July 23, 2020. Defendants filed a Response (ECF No. 43) on August 6, 2020 and Plaintiff filed a Reply (ECF No. 45) on August 13, 2020.

The Court finds these matters properly resolved without a hearing. LR 78-1.

## I. BACKGROUND

This is a personal injury action in which Plaintiff alleges she was injured on September 9, 2018 while traveling as a passenger in a vehicle that was involved in an accident with a vehicle operated by Defendant Dennison within the course and scope of his employment with Defendant Knight Transportation, Inc. The parties have engaged in discovery and the discovery cutoff deadline expired on July 30, 2020. The instant dispute centers on Plaintiff's written discovery requests to Defendant Knight, Plaintiff's deposition notice of Defendant Dennison, Defendants' written discovery seeking Plaintiff's household services documents, and expert disclosure.

Overall, the parties' five motions and associated briefing reflect that while counsel did engage in meet and confer efforts, they failed to follow through to reach a compromise and raised disputes that should not have required Court intervention. The Court encourages counsel to remember their obligation to engage with civility and continue to meet and confer in good faith to avoid clogging up the Court's docket with unnecessary disputes.

## II. DISCUSSION

### a. Legal Standards

Fed.R.Civ.P. 26(b)(1) provides for broad and liberal discovery. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." *Id.* However, a court may limit discovery via Rule 26(c), which permits the court to issue a protective order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense when the party establishes good cause. For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. *See Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992). Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id*; *see also Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th Cir. 2003) (*citing San Jose Mercury News, Inc., v. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999) (holding that the party must make a particularized showing of good cause)).

The Supreme Court has interpreted the language of Rule 26(c) as conferring "broad discretion on the trial court to decide when a protective order is appropriate and what degree of

protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Additionally, the Supreme Court has acknowledged that the "trial court is in the best position to weigh fairly the competing needs and interests of the parties affected by discovery.  The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Id.*

Additionally, Rule 33 requires the responding party to serve its answers or any objections within 30 days after being served with written interrogatories.  Rule 34 requires a party upon whom document requests are served to respond in writing within 30 days after being served with the requests.  The "failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Haddad v. Interstate Management Co., LLC*, 2012 WL 398764, * 1 (D. Nev. 2012) (same).

Furthermore, a party must disclose the identity of any expert witness it intends to use at trial. Fed.R.Civ.P. 26.  The party must also provide a written report of the expert.  *Id*.  Parties must disclose their experts at the times and in the sequence that the Court orders.  *Id*.  The rule contemplates two classes of experts: those retained to provide expert testimony, and those not retained, but may provide expert testimony.  *See Elgas v. Colorado Belle Corp*., 179 F.R.D. 296, 298 (D. Nev. 1998).  Those retained to provide expert testimony must provide a written report of their opinions.  *See* Fed.R.Civ.P. 26(a)(2)(B); *see also* Fed.R.Civ.P. 26(a)(2)(B) advisory committee's notes to 1993 amendment ("[t]he requirement of a written report in paragraph (2)(B), however, applies only to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written order.").

If the expert witness is not required to submit a written report, then the disclosure must provide "the subject matter on which the witness is expected to present evidence" and "a summary of the facts and opinions to which the witness is expected to testify." Fed.R.Civ.P. 26(a)(2)(C)(i)-(ii).  This requirement was added to "mandate summary disclosures of the opinions

to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." Fed.R.Civ.P. 26(a)(2)(C) advisory committee's notes to 2010 amendment.  Treating physicians and other health care professionals are among those whom the plaintiff must identify under Rule 26(a)(2)(A) and then provide a summary under Rule 26(a)(2)(C).  *Id*.  While this disclosure is "considerably less extensive than then report required by Rule 26(a)(2)(B)[,]" the summary is understood to mean the abstract or abridgment of the witnesses testimony.  *Id*.; *see also Carrillo*, 2013 WL 394207, at \*6 (citing *Kristensen ex rel. Kristensen v. Spotnitz*, 2011 WL 5320686, at \*2 (W.D. Va. June 3, 2011)).

When a party fails to meet its expert disclosure obligations, the Court turns to Rule 37(c) to determine the appropriate consequences.  Rule 37 provides that a non-compliant party is "not allowed to use the information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless."  The party facing the sanction has the burden of showing substantial justification or harmlessness.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001).

Courts have outlined several factors in determining whether substantial justification and harmlessness exist, including: (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence.  *See, e.g., David v. Caterpillar, Inc.,* 324 F.3d 851, 857 (7th Cir. 2003); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir. Apr. 13, 2010) (unpublished decision).  It is well-settled that "[h]armlessness may be established if [an expert] disclosure is made sufficiently before the discovery cutoff to enable the movant to depose the expert and challenge his expert report." *Pacific Indem. Co. v. Nidec Motor Corp.*, 203 F. Supp. 3d 1092, 1097 (D. Nev. 2016) (Gordon, J.) (collecting cases).

Even where non-disclosure is neither harmless nor justified, however, courts are not required in all instances to impose an exclusion sanction.  *Jackson v. United Artists Theatre Circuit, Inc*., 278 F.R.D. 586, 594 (D. Nev. 2011).  Courts have wide discretion in determining the appropriate sanction.  *See Yeti*, 259 F.3d at 1106.  In determining the appropriate sanction,

courts look to five factors: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Wendt v. Host Int'l, Inc*., 125 F.3d 806, 814 (9th Cir. 1997).

### b. Plaintiff's Motion to Compel (ECF No. 27)

Plaintiff served her first set of written discovery on November 27, 2019, to which Defendant Knight served responses on December 30, 2019. Defendant Knight acknowledges that it withheld some responsive information due to the confidential nature and sought Plaintiff's agreement to a protective order. The parties ultimately agreed on the terms of a protective order, which the Court approved. (ECF No. 26). Further, Defendant Knight served supplemental responses on June 12, 2020 along with an errata on June 16, 2020 and contends that all responsive documents have been produced. Moreover, Defendants have met and conferred with Plaintiff several times and even offered to stipulate to liability, which was rejected by Plaintiff's counsel. In the instant dispute, Plaintiff seeks to compel supplemental responses from Defendant Knight for its written discovery requests that relate to Defendant Knight's investigation of the accident.

Notably, Plaintiff failed to comply with LR 26-6(b) as it does not set forth in full the disputed discovery requests and responses. This is not just a mere suggestion for Plaintiff to ignore. When she seeks court intervention in a discovery dispute regarding compelling discovery, she must comply with the Court's rules so it can determine the dispute is properly ripe. In addition, Plaintiff failed to present the details and results of the meet and confer on each disputed request in compliance with LR 26-6(c). This is a fatal flaw to Plaintiff's Motion as the Court finds that her request to compel the claims file is not ripe.

Here, the Court examined whether the information sought by the disputed interrogatories and requests for production was relevant to a party's claim or defense and proportional to the needs of the case. It finds that Plaintiff largely carried her burden of demonstrating relevance. For the proportionality analysis, the Court considered the importance of the issues at stake, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit. Fed.R.Civ.P. 26(b)(1); *see also Caballero v. Bodega Latina Corp.*, 2017 WL 3174931 at *2 (D. Nev. July 25, 2017). Ultimately, the Court finds supplementation by Defendant is not necessary as it timely responded with sufficient responses.

First, the Court accepts Defendant's representation that it has produced all responsive documents for the most part. Specifically, the Court cannot compel Defendant Knight to produce drug test results that do not exist. Plaintiff's argument that such test results exist is based on mere speculation that Defendant Knight must have required a drug test due to its policy and federal regulations. However, the Court cannot compel production of something Defendant Knight contends does not exist. Accordingly, it will deny this portion of Plaintiff's Motion.

Second, the Court will also deny Plaintiff's request for information and documents related to the settlement of the driver of Plaintiff's car and Defendant Knight. Plaintiff has failed to demonstrate relevance to this action as that claim was resolved prior to litigation and the driver is a third party. As for the remainder of Plaintiff's request for Defendant's claims file, Defendant is required to provide a privilege log to the extent that it has withheld any documents based on the attorney-client privilege and work-product objections. Its failure to do so is not excused simply because it does not believe the entire claims file is relevant or because it has produced other documents. As such, the Court will require Defendant Knight to supplement its responses with a privilege log that identifies all documents withheld and on the basis of what privilege.

Given that the Court does not have the privilege log to review, it finds the dispute regarding compelling the claims file to be premature. To the extent that the parties still have a dispute about the claims file after that supplementation with a privilege log, they must meet and confer before seeking Court intervention. Further, the Court finds that sanctions are not warranted at present; it does not find the allegation that Defendant Knight has engaged in spoliation of evidence to be substantiated at this point. Moreover, Plaintiff oversteps in contending that Defendant Knight's alleged failure to investigate or create written investigation files warrants adverse sanctions in the discovery phase. Therefore, the Court denies in part and grants in limited part Plaintiff's Motion to Compel as outlined above.

### c. Defendants' Motion for Protective Order (ECF No. 30)

Defense counsel represents that they have been having difficulties contacting Defendant Dennison since at least December 30, 2019 as he lives out of state and works as a long-haul trucker. They outline their extensive efforts to locate him. Defendants seek a protective order to prevent Dennison's deposition scheduled for July 6, 2020. In fact, Defendants claim that because they have offered to stipulate to liability, Dennison's deposition is unnecessary. Further, Defendants argue that Plaintiff is only interested in setting the deposition with the expectation that Dennison will fail to appear and thereafter, Plaintiff will seek to strike Dennison's answer. Plaintiff responds that she seeks to take Dennison's deposition as his written discovery responses were not verified and assessing his testimony is crucial to her prosecution of this case as given no investigatory materials regarding the accident have been produced by Defendants. Defendants reply that Dennison was located and agreed to appear telephonically or in Tucson, Arizona for a deposition on July 10 or 15, 2020 due to his profession as a long-haul trucker who is currently on the road as an essential worker.

The Court does not find good cause to grant Defendants' request to prohibit Plaintiff's deposition of Dennison. Not only is Dennison a party to this action, but he is a central actor. Plaintiff is entitled to take his deposition as a proper discovery device. Moreover, Defendants concede in their Reply that Dennison has been located and will agree to an out-of-state deposition at an in-person court reporter location near his location based on his work schedule. The Court will permit Plaintiff to properly notice and serve a deposition notice for Dennison's deposition. However, given that Dennison lives out of state, and in light of the circumstances occurring around the world with the COVID-19 pandemic, the Court will permit the deposition to be conducted via remote means, namely video. The Court finds that a video deposition will not prejudice Plaintiff's ability to assess Dennison's demeanor and thus, an in-person deposition in Nevada is not necessary. As such, the Court will grant in limited part and deny in part Defendants' Motion as stated above. It also finds that Plaintiff's request for sanctions is not justified as the Court finds that Plaintiff's insistence on an in-person deposition is not warranted under these circumstances.

### d. Defendants' Motion to Compel (ECF No. 33)

Defendants served their Third Set of Requests for Production of Documents on April 23, 2020. Plaintiff served her responses on May 27, 2020. The parties met and conferred regarding their disputed issues and Plaintiff provided a supplement on June 24, 2020. The remaining dispute concerns Request for Production No. 28, which concerns payment, invoices, or contracts for household services that Plaintiff has incurred since the accident i.e. Care.com documents. Plaintiff represents that no documents exists.

The Court takes Plaintiff's representation as true that she has no responsive documents and it cannot compel something that does not exist. Although she may have referenced emails to or from Care.com, they are not necessarily responsive to RFP No. 28 as they may not concern payment, invoices or contracts. Indeed, Plaintiff has a responsibility under Rule 26 to disclose any damages and proof of such damages during discovery. She may be precluded from seeking such damages for household services if they were not properly provided prior to the close of discovery, but Plaintiff contends that she is not seeking damages for these out-of-pocket expenses on home services and her expert's report properly reflects the damages she is seeking. However, Plaintiff cannot have it both ways. If she is seeking such damages and has retained an expert to opine on this category of damages that total over $300,000 in her lifetime, then she cannot prevent Defendants from doing discovery on the source of those damages. Indeed, Defendants may subpoena Care.com via Rule 45 to the extent they believe there is some relevant information that exists in the possession of Care.com. The Court grants Defendants' Motion only to the extent that Plaintiff shall either execute an authorization or not oppose Defendants' subpoena. It will not grant Defendants' request for sanctions as they failed to demonstrate that Plaintiff has responsive documents specific to RFP No. 28 that concern financial transactions as opposed to broader account and selection of household services providers.

### e. Defendants' Motion to Strike (ECF No. 34)

Defendants contend that Plaintiff untimely disclosed expert reports for David Ingebretsen and Dr. Jason Garber on June 30, 2020, the rebuttal expert disclosure deadline, and they should be stricken pursuant to Rule 37. Further, Defendants argue that Ingebretsen and Garber are

masquerading as rebuttal experts when in fact they don't rebut any opinion offered by Defendants' liability experts and are an attempt by Plaintiff to make up for failing to provide a proper expert report for Dr. Garber in her initial disclosures or properly disclose them by the initial expert disclosure deadline.

Plaintiff responds that she timely disclosed Ingebretsen because she did not intend to rely on an accident reconstructionist in her case-in-chief and was only prompted to utilize him as a rebuttal expert after Defendants designated an accident reconstructionist. She also argues that Garber's report is limited to rebutting Defendants' expert Dr. Wang's report while Ingebretsen's report is limited to rebutting Defendants' expert Jones.

The parties dispute the timeliness of Ingebretsen and Garber's disclosure. The Court finds both were timely disclosed as rebuttal experts prior to the expiration of that deadline and should not be excluded. Indeed, Plaintiff's argument is persuasive as they do not appear to be initial experts disguised as rebuttal experts such that their disclosure was not timely. Rebuttal expert testimony is restricted to subjects that are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Rule 26. Courts have repeatedly held that an expert is improperly designated as a rebuttal expert when he has failed to review the initial expert report, or otherwise failed to indicate that he was aware of the opinions offered by the initial expert." *See, e.g., Clear–View Techs., Inc. v. Rasnick*, 2015 WL 3509384, at *4 (N.D. Cal. June 3, 2015) (internal quotations and alterations omitted) (citing *Houle v. Jubilee Fisheries, Inc*., 2006 WL 27204, at *3 & n.4 (W.D. Wash. Jan. 5, 2006) and Amos, 2011 WL 43092, at *1). Quite simply, "an expert cannot be said to 'rebut' testimony he or she has never seen or reviewed." *Clear–View Technologies*, 2015 WL 3509384, at *4. That is not the case here as Plaintiff's rebuttal experts' reports do address Defendants' experts' analysis.

However, the Court does find persuasive Defendants' argument that Plaintiff's rebuttal experts' opinions as to causation and damages may exceed the scope of a rebuttal expert. In fact, Plaintiff's initial disclosure of Garber within the limited range of a treating physician indicates that it is foreseeable that she would need him as an expert in her case-in-chief. Further, given the issues of liability, causation, and reasonableness of Plaintiff's injuries and treatment are central to

the case, it is foreseeable that she would need both an accident reconstructionist and medical expert for her case-in-chief. Assuming the scope of the reports converts Ingebretsen and Garber into untimely disclosed initial experts, it is widely accepted that the untimeliness of an expert report is sufficiently harmless to prevent an exclusion sanction when the opposing party had time to depose the expert and challenge his expert report before the discovery cutoff. *See, e.g., Pacific Indemnity*, 203 F. Supp. 3d at 1097. That is the case here. Both experts were disclosed by the rebuttal expert disclosure deadline and more than a month before the close of discovery, which provided Defendants sufficient opportunity to depose them. As a result, the Court finds that the disclosure of Ingebretsen and Garber was not untimely, but even if it was, it was sufficiently harmless that exclusion is not the appropriate remedy in this case.

Even upon a showing of harmlessness sufficient to rule out an exclusion sanction, courts are empowered to remedy lingering prejudice by imposing less severe sanctions. *See, e.g., Pacific Indemnity,* 203 F. Supp. 3d at 1098. For example, courts may award appropriate attorneys' fees caused by the failure. Fed.R.Civ.P. 37. The untimely disclosure in this case resulted in prejudice to Defendants in that they expended resources to file the instant Motion. As a result, the Court will award Defendants the reasonable attorneys' fees and costs incurred in preparing and filing the instant motion and reply. To the extent counsel cannot agree among themselves on the amount of those fees (which the Court highly encourages), Defendants shall file a motion for fees within 14 days of this order.

### f. Plaintiff's Motion for Protective Order (ECF No. 37)

Plaintiff seeks a protective order to prevent Defendant from deposing her psychiatrist, Dr. Akindele Kolade, and her social worker, Jennifer Yanez. She contends that their treatment of her is privileged. Plaintiff also argues that their treatment is not relevant to this action as she is not claiming any damages due to her mental health as a result of the accident and has not named them as witnesses. Defendants argue that Plaintiff executed an authorization that permits oral testimony to be provided from her specific list of medical providers, which include Cal Psychiatric Services and Insight Therapy Solutions. Further, after receiving records from both places, Defendants designated Kolade and Yanez as witnesses they may utilize at trial. They

argue that Plaintiff's six month delay in objecting to Defendants' discovery into her treatment is untimely.  Also, Defendants contend that Plaintiff's experts, Dr. Oliveri and Dr. Smith, indicated that they reviewed her medical records in providing their opinions.

Preliminarily, the Court finds that the privilege under NRS 49.385 does not bar Defendants from deposing Plaintiff's psychiatrist and social worker.  As Defendants highlight, Plaintiff executed an authorization permitting their deposition.  Plaintiff places great emphasis on the authorization's limitation that only noted that deposition testimony "may" occur.  However, she was clearly aware that deposition testimony may be sought from the providers that she identified, and the two providers at issue were disclosed by Plaintiff.  Moreover, Plaintiff disclosed her medical records to her two experts who reviewed them in drafting their expert reports.  She contends that their limited review and deferral to medical professionals for an opinion as to her mental state negates her experts' review of her mental health records.

Nevertheless, the Court is not convinced that Kolade and Yanez's treatment of Plaintiff is completely irrelevant to this action – as Plaintiff would have the Court believe.   It does find that the treatment at issue is an element of her claim as it is a part of her damages claim.  Defendants are permitted to depose her medical providers under these circumstances to explore the basis for her mental health damages.  However, the Court will provide a limit to those depositions. Defendants may conduct a limited 2 hour deposition of Kolade and a limited 2 hour deposition of Yanez that should focus on questions related to the records provided to Plaintiff's experts in connection with their reports and the mental health treatment related to Plaintiff's claimed loss of enjoyment of life damages.

### III.     CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff's Sealed Motion to Compel (ECF No. 27) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendants' Motion for Protective Order (ECF No. 30) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel (ECF No. 33) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (ECF No. 34) is granted in part and denied in part.  Its Motion for Fees and Costs is due with 14 days of this Order to the extent that the parties cannot reach an agreement.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Protective Order (ECF No. 37) is granted in part and denied in part.

DATED: August 18, 2020

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE