UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALEXIS LEE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>DINO DENNISON, et al.,<br><br>　　　　　Defendants. | Case No. 2:19-cv-01332-KJD-NJK<br><br>ORDER |

Presently before the Court is Defendants' Motion in Limine No. 3 to Exclude Reports and Testimony of Plaintiff's Retained Expert, Dr. David Oliveri Regarding Plaintiff's Future Medical Care. (#90). Plaintiff responded in opposition. (#116).

I.　　Factual and Procedural Background

This action arises from a motor vehicle accident on September 9, 2017. Plaintiff Alexis Lee ("Lee") was driving an economy-sized Hyundai Sonata and Defendant Dino Dennison ("Dennison") was driving a semi-truck as an employee of Defendant Knight Transportation ("Knight") when the two vehicles collided. A nearby police officer responded to the incident, assessed the situation, and filed a report. Lee filed suit against Dennison and Knight for damages.

Defendants bring this motion in limine to exclude the reports and testimony of Plaintiff's expert witness, Dr. David Oliveri regarding Plaintiff's future medical care and his opinion that Plaintiff will need surgery 30 years from now.

II.　　Analysis

**A.  Legal Standard**

A motion *in limine* is a procedural mechanism made in advance to limit testimony or evidence in a particular area" and is "entirely within the discretion of the Court." Diamond X Ranch, LLC v. Atlantic Richfield Co., No. 3:13-cv-00570-MMD-WGC, 2018 WL 2127734, at \*1 (D. Nev. May 8, 2018). A "motion *in limine* should not be used to resolve factual disputes or

weigh evidence." IGT v. Alliance Gaming Corp., No. 2:04-cv-1676-RCJ-RJJ, 2008 WL 7084605, at *2 (D. Nev. Oct. 21, 2008). "To exclude evidence on a motion in limine, 'the evidence must be inadmissible on all potential grounds.'" Diamond X Ranch, 2018 WL 2127734, at *1 (quoting Indiana Ins. Co. v. General Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

Fed. R. Evid. 702 permits a "witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." The Supreme Court gave expanded direction on Rule 702 in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). In Daubert, the Court held that Rule 702 imposed "a special obligation upon a trial judge to 'ensure that any and all scientific testimony… is not only relevant, but reliable.'" See Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). The Court expanded this gatekeeping obligation to all expert testimony. Id. at 147. Daubert "established that, faced with a proffer of expert scientific testimony, the trial judge, in making the initial determination whether to admit the evidence, must determine whether the expert's testimony reflects (1) "scientific knowledge," and (2) will assist the trier of fact to understand or determine a material fact at issue." Daubert, 509 U.S. at 592. The "focus must be solely on principles and methodology, not on the conclusions that they generate." Id. at 595.

The Ninth Circuit has emphasized that "Rule 702 is applied consistent with the liberal thrust of the Federal Rules and their general approach of relaxing the traditional barrier to opinion testimony." Jinro Am. Inc. v. Secure Investments, Inc., 266 F.3d 993, 1004 (9th Cir. 2001). "An expert witness–unlike other witnesses–is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation, so long as the expert's opinion [has] a reliable basis in the knowledge and experience of his discipline." Id. (citations and quotation marks omitted).

In Daubert, the Court also clarified that parties should not be "overly pessimistic about the capabilities of the jury and of the adversary system generally." Daubert, 509 U.S. at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. "The role of the Court is not to determine 'the correctness of the expert's conclusions but the soundness of his methodology.'" Great W. Air, LLC v. Cirrus Design Corporation, No. 2:16-CV-02656-JAD-EJY, 2019 WL 6529046, *3 (D. Nev. 2019). "The judge is supposed to screen the jury from unreliable nonsense opinions… [t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." Id. at 4.

**B.  Dr. Oliveri's Testimony**

Dr. Oliveri is a physiatrist retained by the Plaintiff to testify about Plaintiff's future medical needs. Plaintiff had a disc replacement in her cervical spine in 2019, and Dr. Oliveri intends to testify that Plaintiff will need an adjacent segment surgery at some point 30 years from now.

Defendants object to Dr. Oliveri testifying about Plaintiff needing surgery 30 years in the future because "he is unqualified to offer this opinion." (#90, at 4). "He is not a spinal surgeon and does not claim to be an expert in this area." Id. Defendants claim that his opinion "is based on generalized, anecdotal discussions with Plaintiff's rebuttal expert–Dr. Garber–that were not tethered to Plaintiff in any way." Id.

Defendants also point to several non-binding cases to support the claim that future care should be precluded. Id. at 6. First is Queen v. W.I.C., Inc., No. 14-cv-519-DRH-SCW, 2017 WL 3872180 (S.D. Ill. Sept. 5, 2017), where a physiatrist was prohibited from testifying because his "recommended care plan suggests multiple treatments neither supported by [plaintiff's] medical records, nor recommended by [plaintiff's] treating physicians." Id. at 4. The court also found that the physiatrist's methodology was not "readily recognized as reliable." Id.

Defendants also point to Trinidad v. Moore, No. 2:15-323-WHA, 2016 WL 53541777 (M.D. Ala. Sept. 23, 2016) because an expert with a life care plan was precluded from testifying about future care. In Trinidad, the court concluded that the expert could not testify that the plaintiff

would require surgery because no treating physician had recommended surgery, and so the opinion was based on speculation. Id. at 8. A court held similarly in Rios v. Ramage, No. 2:19-2602-HLT, 2021 WL 2255050 (D. Kan. June 3, 2021).

Defendants assert that Dr. Oliveri's basis for his opinion about future surgery is related to "generic discussions with Dr. Garber in the course of other med-legal work that were in no way related to this case." (#90, at 7). "Essentially, Dr. Oliveri is offering a proxy opinion for Dr. Garber because he himself is unqualified to offer it" and because Dr. Oliveri "never spoke to Dr. Garber about Plaintiff's case." Id.

Plaintiff responded, arguing that Dr. Oliveri's testimony should be included because his opinion is (1) "based upon a physical examination, a review of all of [Lee's] medical records, and the medical literature addressing adjacent segment breakdown in patients who have undergone an artificial disk replacement surgery;" and (2) "a life care planner does not need to be able to perform a surgery to opine as to whether a future surgery will be necessary." (#116, at 2). Plaintiff asserts that Dr. Oliveri is not just deferring to Dr. Garber, but is basing his opinion on a wholistic review of Lee's condition. Id. Plaintiff also distinguishes the three cases cited by Defendants. Id. at 4-5.

The Court finds that Dr. Oliveri's testimony will not be prohibited. Defendants have not demonstrated that Dr. Oliveri's testimony is unreliable or a violation of Rule 702. The Court does not find the case law cited by Defendants persuasive because it is distinguishable– Dr. Oliveri has reviewed Plaintiff's medical records and corresponded with Dr. Garber, Plaintiff's treating physician who already performed cervical surgery, in forming his wholistic opinion about Plaintiff's future care.

III.    Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion in Limine (#90) is **DENIED.**

Dated this 17th day of January, 2023.

_____
Kent J. Dawson
United States District Judge